

SEALED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

AUG 22 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § |  CRIMINAL NO. |
| | § | **INDICTMENT** |
| Plaintiff, | § | |
| | § | |
| v. | § | **18 U.S.C. § 1347,** |
| | § | Health Care Fraud |
| **SCHERRY LYNN MOSES,** | § | **18 U.S.C. § 2,** |
| | § | Aiding and abetting Health |
| | § | Care Fraud |
| | § | **18 U.S.C. § 1343,** |
| | § | Wire Fraud, |
| Defendant. | § | **18 U.S.C. § 1028A(a)(1),** |
| | § | Aggravated Identity Theft |
| | § | **18 U.S.C. § 2,** |
| | § | Aiding and abetting |
| | § | Aggravated Identity Theft |
| | § | **18 U.S.C. § 641,** |
| | § | Theft of Government Funds |
| | § | **42 U.S.C § 1383a (a)(3)(B),** |
| | § | Social Security Fraud |
| | § | **18 U.S.C § 1001(a)(1),** |
| | § | False Statements |
| | § | **18 U.S.C. §§ 981 and 982,** |
| | § | Forfeiture Notice |

**INDICTMENT**

THE GRAND JURY CHARGES:

At all times material to this Indictment:

**THE DEFENDANT**

1.      Defendant **SCHERRY LYNN MOSES** did business in and around San Antonio,

Texas as an individual/sole proprietor and under the DBA (Doing Business As) of Scherry's

Adult Day Activity Center. Defendant **SCHERRY LYNN MOSES** also did business in and

around San Antonio, Texas under the DBA New Creation Residential Care Homes.

2.      Defendant **SCHERRY LYNN MOSES,** doing business as Scherry's Adult Day Activity Center, rented, leased, or otherwise occupied real property in San Antonio, Texas at 552 South WW White Road, (hereinafter referred to as WW White) and at 4464 E. Houston Street (hereinafter referred to as Houston Street). At those locations, she offered to provide adult day activity and health services, commonly referred to as adult day care services, to elderly persons, and to persons with disabilities. **SCHERRY LYNN MOSES** also used those properties as boarding homes for elderly persons, persons with disabilities, and/or other persons.

3.      In addition to the properties described in paragraph 2, and as more fully described below, defendant **SCHERRY LYNN MOSES,** rented, leased, caused others to lease, or otherwise occupied other real property in San Antonio, Texas. Defendant **SCHERRY LYNN MOSES** offered to provide, and/or purported to provide, boarding home services at those locations.

4.      At times, defendant **SCHERRY LYNN MOSES**, also rented rooms at one or more motels in or around San Antonio, Texas. Defendant **SCHERRY LYNN MOSES** used and/or purported to use the motel rooms as adult day care facilities and/or boarding homes.

5.      Defendant **SCHERRY LYNN MOSES** owned a business checking account at Woodforest National Bank in San Antonio, Texas which she opened as a Single Party, Sole-Proprietorship account, and for which she listed the owner of the account as Scherry L Moses DBA New Creation Residential Care Homes, with an address of 5803 Wayview San Antonio, Texas. Defendant **SCHERRY LYNN MOSES** also owned a second business checking account at Woodforest National Bank in San Antonio, Texas which she opened as a Sole-Proprietorship account, and for which she listed the owner of the account as Scherry L Moses DBA Scherry's Adult Day Activity Center, with an address of P.O. Box 201602 San Antonio, Texas.

2

6.      Defendant **SCHERRY LYNN MOSES** assumed the duty and the responsibility to provide adequate and appropriate care for the elderly and/or disabled persons who relied upon her to provide them with adult activity and health services and with shelter. Many of the people just described were recipients of benefits provided by the Texas Medicaid program and/or the federal Supplemental Security Income program.

## TEXAS LAWS REGULATING ADULT DAY CARE SERVICES and FACILITIES

7.      Day Activity and Health Services (DAHS) in Texas, commonly referred to as adult day care services, were regulated by the Texas Administrative code and the Texas Human Resources Code. Chapter 103 of the Texas Human Resources Code, known as the "Day Activities and Health Services Act," was created to "establish programs of quality day activity and health services that will enable persons with disabilities who have medical or functional impairments and elderly persons to maintain maximum independence and to prevent premature or inappropriate institutionalization." The purpose of the Act was also to: "provide adequately regulated supervision for elderly persons and persons with disabilities while enabling them to remain in a family environment and affording the family a measure of normality in its daily activities." Services at DAHS facilities were to be designed to address the physical, mental, medical, and social needs of individuals through the provision of rehabilitative/restorative nursing and social services to improve or maintain a person's level of functioning.

8.      A "Day activity and health services facility" was defined by the Texas Human Resource Code as: "A facility that provides services under a day activity and health services program on a daily or regular basis, but not overnight, to four or more elderly persons or persons with disabilities who are not related by blood, marriage or adoption to the owner of the facility." As used in the Texas Administrative Code, "Elderly person" was defined as a person 65 years of

3

age or older, and "Person with a Disability" was defined as a person whose functioning was sufficiently impaired to require frequent medical attention, counseling, physical therapy, therapeutic or corrective equipment, or another person's attendance and supervision.

9.      A "Day activity and health services program" was defined by the Texas Human Resource Code as: "a structured, comprehensive program that is designed to meet the needs of adults with functional impairments through an individual plan of care by providing health, social, and related support services in a protective setting.

10.     No person was permitted to establish or operate a DAHS facility in Texas without a license issued by the Texas Department of Aging and Disability Services (DADS) in accordance with the Texas Human Resources Code, Chapter 103, and Chapter 98 of the Texas Administrative Code. Licensed Day Activity and Health Services facilities provided daytime services, up to 10 hours per day, Monday through Friday.

11.     The standards for DAHS facilities in Texas were developed to comply with the intent and requirements of: Title 6 of the Texas Human Resources Code, Chapters 102 and 103; 45 Code of Federal Regulations (CFR) Part 96, Title XX of the Social Security Act; and 42 CFR 440.130(d), Title XIX of the Social Security Act.

## TEXAS LAWS REGULATING BOARDING HOME FACILITIES

12.     Boarding home facilities in Texas were regulated by the Texas Health and Safety Code. A "Boarding home facility" was defined in the code as "an establishment that: (A) furnishes, in one or more buildings, lodging to three or more persons with disabilities or elderly persons who are unrelated to the owner of the establishment by blood or marriage; and (B) provides community meals, light housework, meal preparation, transportation, grocery shopping, money management, laundry services, or assistance with self-administration of medication but

4

does not provide personal care services as defined by Section 247.002 to those persons."
"Elderly person" was defined as a person 65 years of age or older. "Person with a disability" was
defined as "a person with a mental, physical, or intellectual or developmental disability that
substantially impairs the person's ability to provide adequately for the person's care or protection
and who is: (A) 18 years of age or older; or (B) under 18 years of age and who has had the
disabilities of minority removed."

13.     As required by House Bill 216 (81st Texas Legislature, Regular Session, 2009),
the Texas Health and Human Services Commission (HHSC) developed, and approved, model
standards for the operation of boarding home facilities. The model standards related among other
things to housing conditions, to ensure the residents' health, safety, comfort, and protection from
fire hazard, sanitary and related conditions in a boarding home facility and its surroundings, to
ensure the residents' health, safety, and comfort.

### THE DEFENDANT'S ILLEGAL OPERATION OF
### SCHERRY'S ADULT DAY ACTIVITY CENTER

14.     Defendant **SCHERRY LYNN MOSES** had a license to operate a DAHS facility
at the WW White location from on or about November 08, 2009 until on or about November 08,
2011. In or around November 2011 DADS denied defendant **SCHERRY LYNN MOSES'**
application to renew her license to operate Scherry's Adult Day Activity Center as a DAHS
facility at the WW White location because of violations of the Texas Life and Safety Code.
Defendant **SCHERRY LYNN MOSES** ignored the denial of her application to operate a DAHS
facility at the WW White location and continued to offer, and bill, for DAHS services at that
address from and after November 2011. Defendant **SCHERRY LYNN MOSES** also used the
WW White address as a boarding home.

15.     Defendant **SCHERRY LYNN MOSES** held a license to operate a DAHS facility

at the Houston Street location from on or about August 05, 2010 until on or about August 05, 2014. The Houston Street DAHS facility closed when defendant **SCHERRY LYNN MOSES** was evicted from that property for nonpayment of rent on or about February 26, 2013. When defendant **SCHERRY LYNN MOSES** was evicted from the Houston Street property, she took the license for that facility to the property on WW White. Although the license was only valid for the Houston Street facility, defendant **SCHERRY LYNN MOSES** displayed it at the WW White location as if it was a valid license for that location/facility.

## MEDICAID AND SOCIAL SECURITY

### Medicaid

16.     The Texas Medical Assistance program (hereinafter referred to as Medicaid) was a state specific, but federal health care benefit program created on or about September 1, 1967 under the provisions of, and subject to, Title XIX of the federal Social Security Act, and Chapter 32 of the Texas Human Resources Code. Through its various plans and programs, the Medicaid program was a plan or program, or network of plans and programs, which through insurance or otherwise, provided health care benefits, to persons who had limited income. Medicaid was funded in part by the State of Texas, and in part by the United States Government. Medicaid was a health care benefit program as defined by 18 U.S.C. § 24(b).

17.     The Texas Health and Human Services Commission (HHSC) was the state governmental agency responsible for the Medicaid program in Texas. HHSC arranged for various entities to provide administrative services to the Medicaid program in Texas, including but not limited to, as processing and/or arranging for the payment of bills submitted by authorized Medicaid providers for allowed services provided to Texas to Medicaid recipients.

6

18.     Authorized Medicaid providers who provided adult day care services (Day Activity and Health Services) to Medicaid recipients in Texas submitted their bills for Medicaid payments to the Texas Medicaid and Health Care Partnership (TMHP), or to the Texas Medicaid Managed Care Organizations (MCOs) known as Amerigroup of Texas, Inc., Molina Healthcare of Texas, Inc., and Superior Health Plan, Inc.

19.     Authorized Medicaid providers submitted their bills, also known as claims, for services either in hard copy or electronically. Electronic bills to Molina Healthcare of Texas, Inc. were processed through Molina's office in Albuquerque, New Mexico. Electronic bills to Superior Health Plan, Inc. were processed through Superior's office in Farmington, Missouri. Every bill from a provider contained a certification that the claims being billed were true and accurate, that the services were reasonable and medically necessary, and that the claimed medical services had actually been provided by the Medicaid provider.

20.     A National Provider Identifier (NPI) was a unique government issued identification number assigned to providers of health care items and services. The NPI was a 10-digit number assigned randomly by the National Plan and Provider Enumeration System (NPPES), which was developed by the federal government through the Centers for Medicare and Medicaid Services (CMS). The purpose of the National Provider Identifier (NPI) was to improve the efficiency and effectiveness of the electronic transmission of health information by health care providers. A health care provider used her or his unique assigned NPI number to identify herself or himself in standard transactions, such as health care claims to Medicaid, as the person who provided the health care services billed. In or around January 2008, defendant **SCHERRY LYNN MOSES** applied for and was assigned her own individual and unique NPI number.

21.     Defendant **SCHERRY LYNN MOSES,** doing business as Scherry's Adult Day Activity Center entered into agreements with the Texas Department of Aging and Disability Services (DADS) and the Medicaid Managed Care Organizations (MCOs) known as Amerigroup of Texas, Inc., Molina Healthcare of Texas, Inc., and Superior Health Plan, Inc. to provide adult day care services (Day Activity and Health Services) to Medicaid recipients in Texas. Medicaid and the MCOs just described were all health care benefit programs as defined by 18 U.S.C. § 24(b).

22.     Title 1, Texas Administrative Code, Section 355.105 required providers, including defendant **SCHERRY LYNN MOSES**, doing business as Scherry's Adult Day Activity Center, to submit annual cost reports containing financial and statistical information to reflect the activities of the provider while delivering contracted services during the prior fiscal year. Cost reports were required to contain adequate documentation consisting of all materials necessary to demonstrate the relationship of personnel, supplies, and services to the provision of contracted client care.

23.     **SCHERRY LYNN MOSES'** contract with the Texas Department of Aging and Disability Services (DADS) was effective as of September 01, 2008. On June 09, 2009 the Texas Health and Human Services Commission, suspended payments to defendant under the DADS contact because of her failure or refusal to produce a mandatory cost report for 2008. Defendant **SCHERRY LYNN MOSES** was able to continue to bill (and receive payments from) the MCOs.

24.     In and around June and July 2014, Medicaid MCOs Molina Healthcare of Texas, Inc., and Superior Health Plan, Inc. independently asked defendant **SCHERRY LYNN MOSES** to confirm that the DAHS facility she was ostensibly operating at the WW White address was

properly licensed by the Texas Department of Aging and Disability Services (DADS). In response to both requests defendant **SCHERRY LYNN MOSES** falsely provided the license number she held for the abandoned and closed Houston Street facility.

### Social Security and Supplemental Security Income

25.     The federal Social Security Act was created for the purpose of establishing a system of federal benefits for senior citizens, generally known as Social Security retirement benefits.

26.     The federal Supplemental Security Income (SSI) program was created for the purpose of providing financial assistance to persons who are disabled, blind, or aged 65 or older, who have little or no means of providing income for themselves. The program provided monthly payments intended to meet the recipients' basic needs for food, clothing and shelter.

27.     The federal Social Security Administration (SSA) administered the Social Security and the Supplemental Security Income programs and was responsible for sending monthly Social Security retirement payments and Supplemental Security Income payments to qualified beneficiaries.

28.     Millions of Americans who received monthly Social Security or Supplemental Security Income (SSI) benefits, needed help managing their money. The Social Security's Representative Payment Program provided a mechanism for financial management for the Social Security and SSI payments of beneficiaries who were incapable of managing their Social Security or SSI payments. The program allowed Social Security and SSI beneficiaries to appoint a relative, friend, or other interested party to serve as the beneficiary's "representative payee." A person appointed as a representative payee, took on an important responsibility and a fiduciary duty to the beneficiary.

29.     Representative payees were required to know the beneficiary's needs so the representative payees could decide the best use of benefits for the beneficiary's care and well-being. The Social Security Administration required representative payees to use the SSI payments: (1) First, to take care of the beneficiary's day-to-day needs for food and shelter; (2) Second, for the beneficiary's medical and dental care that was not covered by health insurance; (3) Third, for the beneficiary's personal needs, such as clothing and recreation. The representative payee was required to save, preferably in an interest-bearing account or U.S. Savings Bonds, any money left after paying for the beneficiary's needs.

30.     Every person who was a recipient of Supplemental Security benefits received a government issued identification number as a means of identification. Every Social Security identification number was unique, and personal to the Social Security recipient to whom it was assigned. Social Security identification numbers were a means of identification used to identify Supplemental Security recipients.

## THE DEFENDANTS' SCHEME TO DEFRAUD MEDICAID

31.     Beginning on or about January 07, 2008 and continuing through on or about May 09, 2016, defendant **SCHERRY LYNN MOSES** executed or attempted to execute a scheme or artifice to defraud the health care benefit program known as Medicaid, through the Medicaid Managed Care Organizations known as Amerigroup of Texas, Inc., Molina Healthcare of Texas, Inc., and Superior Health Plan, Inc., or to obtain, by means of false or fraudulent pretenses, representations or promises any of the money or property owned by or under the control of said health care benefit programs. Said scheme or artifice was in connection with the delivery or payment for health care benefits.

32.     As part of the execution or attempted execution of her scheme or artifice

described in paragraph 31 and elsewhere herein, in furtherance thereof, and for the purpose of

executing her scheme or artifice to defraud the Medicaid and the Medicaid MCOs, defendant

**SCHERRY LYNN MOSES:**

a. Held herself out as operating one or more adult day care (DAHS) facilities in or around San Antonio, Texas

b. Operated one or more adult day care (DAHS) facilities in or around San Antonio, Texas in violation of the Texas Day Activity and Health Services Act.

c. Failed to provide the level, quality, and quantity of adult day care services required of a properly qualified DAHS Facility.

d. Submitted bills to the Medicaid MCOs for adult day care services (DAHS) that did not meet the level, quality and quantity of services required of a properly qualified DAHS Facility; and which did not meet the level, quality and quantity of the services she was required by Medicaid and the Medicaid MCOs to provide in order to bill for adult day care services.

e. Submitted false and fraudulent bills to the Medicaid MCOs for adult day care services (DAHS) allegedly provided to Medicaid recipients at the WW White location, when in fact she provided no services to the Medicaid recipients.

f. Submitted false and fraudulent bills to the Medicaid MCOs for adult day care services (DAHS) allegedly provided to Medicaid recipients, when in fact, she provided no services because the Medicaid recipients were incarcerated in the Bexar County Jail on the dates she claimed to have provided the services.

g. Submitted a bill to a Medicaid MCO for adult day care services (DAHS) allegedly provided to a Medicaid recipient, when in fact, she provided no services because both she and the Medicaid recipient were incarcerated in the Bexar County Jail on the dates she claimed to have provided the services.

h. Transmitted or caused to be transmitted, by means of wire, radio, or television

11

communication in interstate commerce writings, including but not limited to, false and fraudulent bills, and electronic funds transfers on said bills.

i.     Falsely and fraudulently represented to the Medicaid MCOs and the public that the facility at 552 WW White Road, San Antonio, Texas was licensed by the State of Texas as an adult day care facility (DAHS).

j.     Falsely and fraudulently represented to Molina Healthcare of Texas, Inc. that she had never been sanctioned or disciplined by any State or Federal body.

k.     Falsely and fraudulently failed to disclose to Superior Health Plan, Inc. that she had a prior felony conviction for welfare fraud in the State of Texas.

l.     Falsely and fraudulently stated, under oath, on applications to renew her licenses to operate Day Activity and Health Services (DAHS) facilities in San Antonio, Texas at 552 South WW White Road, and at 4464 E. Houston Street, that she had never been convicted of a state crime that carried a penalty of incarceration.

## DEFENDANT'S SOCIAL SECURITY FRAUD

### REPRESENTATIVE PAYEE SCHEME TO CONVERT BENEFITS AND CONCEALMENT OF MATERIAL INFORMATION

33.     **SCHERRY LYNN MOSES'** scheme to defraud the beneficiaries she represented centered on her operation of unlicensed boarding homes and misuse of the beneficiaries' benefits. As a representative payee **SCHERRY LYNN MOSES** was required to use the beneficiary's benefits for the needs of those who she represented. **SCHERRY LYNN MOSES** not only controlled the benefits paid to her by the SSA as a representative payee, but was also the owner/operator and landlord for facilities in which each of these beneficiaries lived. **SCHERRY LYNN MOSES** charged a monthly room and board fee between $500 and $700 to each of the beneficiaries. For this fee, the beneficiaries were supposed to receive the following services: minimum of two meals a day, bed, paid utilities and monthly allowance for personal purchases.

**SCHERRY LYNN MOSES** did not meet these basic needs and would regularly leave the beneficiaries to care for themselves.

34.    **SCHERRY LYNN MOSES** rented homes or commercial properties for $1,000 to $2,500 per month and would place between eight to ten beneficiaries in these properties. **SCHERRY LYNN MOSES** received $4,500 to $7,000 monthly in SSA benefits from the beneficiaries for room and board, depending on the number of beneficiaries for whom she was the representative payee for on any particular month. The amount received should have allowed her to meet her contractual obligations for each property.

35.    **SCHERRY LYNN MOSES** would make one or two rental payments to the rental property owners/managers and would discontinue or refuse to make additional rental payments.  This led to the rental property owners filing civil suits resulting in forcible eviction of **SCHERRY LYNN MOSES** and the beneficiaries from the properties. From 2013 through 2016, the beneficiaries were forced to move and live in multiple hotels/motels throughout San Antonio. During this time **SCHERRY LYNN MOSES** failed to: account for the money she was receiving from the SSA, report the evictions to SSA and converted the beneficiary's monthly benefits for her own personal use. During the relevant time periods **SCHERRY LYNN MOSES** took multiple personal trips to casinos in Louisiana, leaving the beneficiaries without supervision or access to their entitled funds.

## THE RENTAL AGREEMENTS

36.    Below is a chart listing the properties in San Antonio, Texas leased by, or for, **SCHERRY LYNN MOSES**, the monthly rent, and dates she was evicted from said properties:

| Property | Monthly Rent | Dates of Rental Agreement | Date of Eviction |
|---|---|---|---|
| Property 1 | $1,000 per month | September 2008-2014 | February 18, 2014 |
| Property 2 | $1,000 per month | September 2009-2014 | February 19, 2014 |

| Property 3 | $1,000 per month | March 2010-2014 | March 07, 2014 |
|---|---|---|---|
| Properties 4 and 5 | $5,000 per month | June 2014-2017 | November 22, 2014 |
| Property 6 | $1,600 (04/16-01/17)<br>$1,650 (02/17-01/18)<br>$1,700 (02/18-01/19)<br>$1,750 (02/19-01/21) | March 2016-January 2021 | June 24, 2016 |

## THE BENEFICIARIES

37.     On February 16, 2016, **SCHERRY LYNN MOSES** submitted an application to be BENEFICIARY 1's representative payee and the SSA selected **SCHERRY LYNN MOSES** as BENEFICIARY 1's representative payee. On the application **SCHERRY LYNN MOSES** listed Property 7, San Antonio, Texas, as her address. **SCHERRY LYNN MOSES** also stated that BENEFICIARY 1 would be living with her at the listed address.

38.     SSA systems records list BENEFICIARY 1's residential address from February 24, 2015 to March 31, 2017, as a property on Glen Arbor, San Antonio, Texas. BENEFICIARY 1 did not reside at a property on Glen Arbor in San Antonio, Texas.  BENEFICIARY 1 resided at a property on Mary Diane and Property 6.

39.     On April 14, 2010, **SCHERRY LYNN MOSES** submitted an application and was selected as the representative payee for BENEFICIARY 2. On September 24, 2013, the SSA terminated **SCHERRY LYNN MOSES** as representative payee for BENEFICIARY 2. SSA systems records list BENEFICIARY 2's residential address as Property 7.

40.     On September 24, 2009, **SCHERRY LYNN MOSES** submitted an application and the SSA selected **SCHERRY LYNN MOSES** as BENEFICIARY 3's representative payee. On July 5, 2016, SSA terminated **SCHERRY LYNN MOSES** as the representative payee of BENEFICIARY 3. SSA systems listed the address for BENEFICIARY 3 as P.O. Box 202274, San Antonio, Texas from September 24, 2009 through July 5, 2016. BENEFICIARY 3 stayed at

facilities run by **SCHERRY LYNN MOSES**.

41.     On October 8, 2014, SCHERRY LYNN MOSES submitted an application and the SSA selected her as the representative payee for BENEFICIARY 4 On January 8, 2016, the SSA terminated **SCHERRY LYNN MOSES** as the representative payee. SSA systems listed Property 7, San Antonio, Texas as BENEFICIARY 4's address from July 3, 2014 through July 1, 2016.

42.     **SCHERRY LYNN MOSES** submitted an application and the SSA selected **SCHERRY LYNN MOSES** as BENEFICIARY 5's representative payee on three separate occasions: (1) submitted on March 11, 2011 and terminated on July 11, 2014; (2) submitted on October 22, 2014 and terminated on April 11, 2015; (3) submitted on May 6, 2015 and terminated on August 16, 2016. SSA systems listed addresses for BENEFICIARY 5 during the period **SCHERRY LYNN MOSES** was the representative payee: (1) Property 2, San Antonio, Texas from March, 2011 through July, 2014; (2) a property at WW White, San Antonio, Texas from July, 2014 through October, 2014; (3) Property 7, San Antonio, Texas from October, 2014 through August, 2016.

43.     **SCHERRY LYNN MOSES** submitted an application and the SSA selected **SCHERRY LYNN MOSES** as the representative payee for BENEFICIARY 6 on three separate occasions: (1) submitted on February 14, 2011 and terminated on September 29, 2011; (2) submitted on June 8, 2012 and terminated on August 16, 2013; (3) submitted on January 28, 2014 and terminated on October 14, 2015.  SSA systems listed addresses for BENEFICIARY 6 during the period **SCHERRY LYNN MOSES** was the representative payee: (1) Property 7, San Antonio, Texas from February, 2011 through September, 2011; (2) a property at Leonidas, San Antonio, Texas from June, 2012 through August, 2013; (3) Property 1, San Antonio, Texas from

January, 2014 through October, 2015.

44.    **SCHERRY LYNN MOSES** submitted an application and the SSA selected her as BENEFICIARY 7 's representative payee on April 14, 2010. The SSA terminated **SCHERRY LYNN MOSES** as the representative payee on October 26, 2016.  SSA systems listed Property 7 as the residence for BENEFICIARY 7 during the period in which **SCHERRY LYNN MOSES** was listed as her representative payee.

45.    **SCHERRY LYNN MOSES** submitted an application and the SSA selected her as the representative payee for BENEFICIARY 8 on three separate occasions: (1) submitted on December 30, 2009 and terminated on October 17, 2011; (2) submitted on December 16, 2011 and terminated on November 20, 2012; (3) submitted on May 14, 2014 and terminated on December 15, 2015. SSA systems listed addresses for BENEFICIARY 8 during the period **SCHERRY LYNN MOSES** was the representative payee as:  a property on Leonidas, San Antonio, Texas from December, 2009 through November, 2013 and Property 7, San Antonio, Texas from April, 2014 through August, 2015. BENEFICIARY 8, lived in **SCHERRY LYNN MOSES**-run homes on Leonidas, Regal View, Wayview and Mary Diane in San Antonio.

46.    Law enforcement officials incarcerated BENEFICIARY 8 in the Bexar County Jail from May 20, 2014 through December 16, 2014. **SCHERRY LYNN MOSES**, while acting as the representative payee, concealed and failed to report his incarceration and fraudulently continued receiving BENEFICIARY 8's SSI benefit payments and converted the SSI benefits to her own use when no payment was due.

47.    **SCHERRY LYNN MOSES** repeatedly listed her personal residence, property 7, San Antonio, TEXAS, as the residence for the beneficiaries on SSA representative payee applications. As of August 6, 2013, **SCHERRY LYNN MOSES** could not have owned or lived

16

at the property in question as it was the subject of a foreclosure.

## COUNTS 1 - 4

### HEALTH CARE FRAUD and AIDING AND ABETTING
### Title 18 United States Code, §§ 1347 and 2

48.     The Grand Jury incorporates by reference paragraphs 1 through 47 set out above as though fully restated and re-alleged herein.

49.     Beginning on or about January 07, 2008, and continuing through on or about May 09, 2016, in the Western District of Texas, and elsewhere within the jurisdiction of the Court, and in connection with the delivery of, or payment for, health care benefits, items and services, defendant,

### SCHERRY LYNN MOSES

aided and abetted by others, and aiding and abetting others, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud health care benefit programs, namely the Texas Medicaid program and the Texas Medicaid Managed Care Organizations (MCOs) known as Amerigroup of Texas, Inc., Molina Healthcare of Texas,  Inc., and Superior Health Plan, Inc.; or to obtain by means of false and fraudulent pretenses, representations and promises, money and property owned by or under the custody and control of said health care benefit programs. As a part of said scheme and artifice, **SCHERRY LYNN MOSES** submitted, or caused others to submit, false and fraudulent claims to the Texas Medicaid Managed Care Organizations (MCOs) known as Amerigroup of Texas, Inc., Molina Healthcare of Texas, Inc., and Superior Health Plan, Inc. for adult day care services (DAHS) which were not provided, including but not limited to the following:

17

| Count | Medicaid Recipient | Claimed Service Dates | Date billed (on or about) | Amount Billed |
|-------|-------------------|----------------------|---------------------------|---------------|
| 1 | B.C. | 10/14/2013 to 10/18/2013 | 11/09/2013 | $140.10 |
| 2 | C.A. | 02/03/2014 to 02/07/2014 | 02/23/2014 | $140.10 |
| 3 | C.C. | 09/08/2014 to 09/12/2014 | 09/22/2014 | $140.10 |
| 4 | B.R. | 10/20/2014 to 10/24/2014 | 11/02/2014 | $140.10 |

All in violation of Title 18, United States Code, §§ 1347 and 2.

## COUNTS 5 - 8

### WIRE FRAUD
### Title 18 United States Code, § 1343

50.     The Grand Jury incorporates by reference paragraphs 1 through 47 set out above as though fully restated and re-alleged herein.

51.     Beginning on or about November 14, 2011 and continuing through on or about May 09, 2016, in the Western District of Texas, and elsewhere within the jurisdiction of the Court, defendant,

### SCHERRY LYNN MOSES

having devised or intended to devise a scheme or artifice to defraud the Texas Medicaid MCOs, or for obtaining money or property from the Texas Medicaid MCOs by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice; including but not limited to the following:

| Count | Item Transmitted by Wire in Interstate Commerce | Claimed Service Dates | Date bill sent (on or about) | Medicaid Recipient |
|---|---|---|---|---|
| 5 | Bill for services sent to Superior Health Plan Inc. Farmington, Missouri | 10/14/2013 to 10/18/2013 | 11/09/2013 | B.C. (Count 1) |
| 6 | Bill for services sent to Superior Health Plan Inc. Farmington, Missouri | 02/03/2014 to 02/07/2014 | 02/23/2014 | C.A. (Count 2) |
| 7 | Bill for services sent to Molina Healthcare of Texas Inc. Albuquerque, New Mexico | 09/08/2014 to 09/12/2014 | 09/22/2014 | C.C. (Count 3) |
| 8 | Bill for services sent to Superior Health Plan Inc. Farmington, Missouri | 10/20/2014 to 10/24/2014 | 11/02/2014 | B.R. (Count 4) |

All in violation of Title 18, United States Code, § 1343.

## COUNTS 9 - 12

### AGGRAVATED IDENTITY THEFT and AIDING AND ABETTING
### Title 18 United States Code, §§ 1028A(a)(1) and 2

52.     The Grand Jury incorporates by reference paragraphs 1 through 47 set out above as though fully restated and re-alleged herein.

53.     Beginning on or about November 14, 2011 and continuing through on or about May 09, 2016, in the Western District of Texas, and elsewhere within the jurisdiction of the Court, during and in relation to, felony offenses enumerated under 18 U.S.C. § 1028A(c)(5), namely Wire Fraud in violation of 18 U.S.C. §1343, and Health Care Fraud in violation of 18 U.S.C. § 1347, defendant,

### SCHERRY LYNN MOSES

knowingly used, aided and abetted others in the use of, and otherwise caused others to use,

without lawful authority, a means of identification of another person, to wit: Medicaid recipients'

names; including but not limited to the following:

| Count | Means of Identification used on | Means of Identification used on bill sent on or about | Person whose Means of Identification was used |
|---|---|---|---|
| 9 | Bill for services sent to Superior Health Plan Inc. | 11/09/2013 | Medicaid Recipient B.C. (Count 1) |
| 10 | Bill for services sent to Superior Health Plan Inc. | 02/23/2014 | Medicaid Recipient C.A. (Count 2) |
| 11 | Bill for services sent to Molina Healthcare of Texas Inc. | 09/22/2014 | Medicaid Recipient C.C. (Count 3) |
| 12 | Bill for services sent to Superior Health Plan Inc. | 11/02/2014 | Medicaid Recipient B.R. (Count 4) |

All in violation of Title 18, United States Code, §§ 1028A(a)(1) and 2.

## COUNT 13

## THEFT OF GOVERNMENT FUNDS
### Title 18 United States Code § 641

54.     The Grand Jury incorporates by reference paragraphs 1 through 47 set out above

as though fully restated and re-alleged here in.

55.     Beginning in or around September 1, 2013 and continuing through on or about

November 30, 2016, in the Western District of Texas, and elsewhere within the jurisdiction of

the Court, in violation of Title 18, United States Code, § 641, defendant,

**SCHERRY LYNN MOSES**

willfully and knowingly, did steal and purloin Title II Disability Insurance Benefits (DIB) and

Title XVI, Supplemental Security Income (SSI) benefits, of a value exceeding $1,000, of the

goods and property of the United States.

## COUNT 14

### SOCIAL SECURITY FRAUD
### Title 42 United States Code § 1383a(a)(3)(B)

56.    The Grand Jury incorporates by reference paragraphs 1 through 47 set out above

as though fully restated and re-alleged here in.

57.    Beginning on or about May 20, 2014 and continuing through on or about

December 16, 2014, in the Western District of Texas, and elsewhere within the jurisdiction of the

Court, in violation of Title 42 United States Code § 1383a(a)(3)(B), the defendant,

**SCHERRY LYNN MOSES**

having knowledge of the occurrence of any event affecting the initial or continued right to any

such benefit of any other individual in whose behalf he has applied for or is receiving such

benefit, conceals or fails to disclose said event with intent to fraudulently secure payment in a

greater amount or quantity than is due or when no such benefit is authorized; to wit, the

defendant knowingly concealed and failed to disclose that BENEFICIARY 8 was not in her care

and custody from May 20, 2014 through December 16, 2014 for the purpose of continuing to

receive BENEFICIARY 8's SSI benefit payments when no payment was due.

## COUNTS 15-20

## FALSE STATEMENTS
### Title 18 United States Code § 1001(a)(1)

58.     The Grand Jury incorporates by reference paragraphs 1 through 47 set out above as though fully restated and re-alleged here in.

59.     From on or about the days stated below, to on or about the days stated below, in the Western District of Texas, and elsewhere within the jurisdiction of the Court, in violation of Title 18, United States Code, Section 1001(a)(1), defendant,

### SCHERRY LYNN MOSES

did willfully and knowingly falsify, conceal, and cover up by trick, scheme, and device a material fact in the matter within the jurisdiction of the Social Security Administration, an executive branch of the Government of the United States The material facts concealed by the defendant were the correct residences for the beneficiaries below and that the beneficiaries below had been evicted from said residences.

| Count | Beneficiary | From on or about | To on or about |
|-------|-------------|------------------|----------------|
| 15 | BENEFICIARY 1 | June 24, 2016 | August 25, 2016 |
| 16 | BENEFICIARY 2 | August 6, 2013 | October 7, 2013 |
| 17 | BENEFICIARY 3 | February 19, 2014 | July 5, 2016 |
| 18 | BENEFICIARY 4 | November 22, 2014 | January 8, 2016 |
| 19 | BENEFICIARY 5 | February 19, 2014 | August 26, 2016 |
| 20 | BENEFICIARY 6. | February 18, 2014 | October 14, 2015 |

All in violation of Title 18, United States Code, Section 1001(a)(1).

## COUNT 21

### FALSE STATEMENTS
### Title 18 United States Code § 1001(a)(1)

60.   The Grand Jury incorporates by reference 1 through 47 set out above as though fully restated and re-alleged here in.

61.   From on or about August 6, 2013, to on or about October 21, 2016, in the Western District of Texas, and elsewhere within the jurisdiction of the Court, in violation of Title 18, United States Code, Section 1001(a)(1), defendant,

### SCHERRY LYNN MOSES

did willfully and knowingly falsify, conceal, and cover up by trick, scheme, and device a material fact in the matter within the jurisdiction of the Social Security Administration, an executive branch of the Government of the United States by, concealing the fact that the beneficiary, BENEFICIARY 7 represented by the defendant, was not living in the location listed on the application with the Social Security Administration because that property had been foreclosed on August 6, 2013.

### NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
### [*See* Fed. R. Crim. P. 32.2]

This Notice of Demand for Forfeiture includes, but is not limited to the properties described in Paragraphs III and IV.

### I.
### Fraud Violations and Forfeiture Statute
### [Title 18 U.S.C. §§ 1347, 1343, and 1001,
### subject to criminal forfeiture pursuant to Title 18 U.S.C. § 982(a)(7)]

As a result of the criminal violations set forth in counts One through Eight and Fifteen through Twenty-One, the United States gives notice to the Defendant of its intent to seek the

forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and

Title 18 U.S.C. § 982(a)(7), which states:

> **Title 18 U.S.C. § 982. Criminal forfeiture**
> **(a)(7)** The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

## II.
## Theft Violation and Forfeiture Statutes
### [Title 18 U.S.C. § 641, subject forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. 2461]

As a result of the criminal violation set forth in Count Thirteen, the United States gives

notice to the Defendant of its intent to seek the forfeiture of the property described below upon

conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(l)(C), made applicable

to criminal forfeiture by Title 28 U.S.C. § 2461, which states:

> **Title 18 U.S.C. § 981. Civil forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## III.
## Money Judgment

**Money Judgment:** A sum of money equal to the amount of proceeds that constitutes or is derived from the proceeds traceable to the offenses for which Defendant **SCHERRY LYNN MOSES** is convicted.

## IV.
## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set

forth above, as a result of any act or omission of the Defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property owned by the

Defendant, up to the value of said money judgment, as substitute assets, pursuant to Fed. R.

Crim. P. 32.2(e)(1) and Title 21 U.S.C. § 853(p).

<br/>

                              A TRUE BILL



                              FOREPERSON OF THE GRAND JURY

<br/>

JOHN F. BASH
UNITED STATES ATTORNEY

By: _____
FIDEL ESPARZA III
Special Assistant United States Attorney


By: _____
REX G. BEASLEY
Special Assistant United States Attorney